

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARY F. BIANCHI,                          )
                                          )
                    Plaintiff,            )
                                          )
          vs.                             )        No.   05 C 5769
                                          )
THE BUREAUS, INC., an Illinois            )
corporation,                              )
                                          )
                    Defendant.            )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Mary Bianchi, brought this action against defendant, The Bureaus, Inc., alleging violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq.* Plaintiff claims that defendant's attempt to collect a debt that was subject to a bankruptcy court stay was a false, deceptive or misleading practice, §1692e, and was an improper communication with a consumer represented by counsel, §1692c(a)(2). The parties each move for summary judgment. For the reasons that follow, we deny both motions.

## BACKGROUND

Although the parties disagree on several key items, we are able to piece together the following general facts from the parties' Rule 56.1 Statements of Fact and other submissions. Plaintiff filed a voluntary Chapter 7 bankruptcy petition on May 13, 2005: In re Bianchi, Northern District of Illinois Bankruptcy No. 05-19294. At the time she filed for bankruptcy, she owed Dr. Maleeha Ahsan $558 for medical services (plf's stmt. exh. C at 3). She included this debt on Schedule F of her bankruptcy petition and listed contact information for Dr. Ahsan and defendant (*id*). The bankruptcy court automatically stayed collection on plaintiff's

debts, and on May 18, 2005, notified both Dr. Ahsan and defendant of the bankruptcy filing (*id.*, exh. D at 3). The notice was sent via first-class mail (*id).*

On July 17, 2005, an employee of defendant, Dian Landers, called plaintiff in an attempt to collect the debt (*id.,* exh. A, ¶5; def's stmt. exh. C at 10). The parties characterize this phone call very differently. Plaintiff testified during her deposition that Ms. Landers was rude to her and refused to accept her attorney's contact information despite plaintiff's attempts to provide the information (plf's stmt. exh. B at 22-24). Defendant asserts that plaintiff refused to provide her attorney's information and then hung up on Ms. Landers[1] (def's stmt., exh. C at 10).

Sometime in the next few weeks (the exact timing is disputed, but that is unimportant for our purposes), Ms. Landers again called plaintiff. Defendant's records indicate that during this conversation plaintiff provided the name and address of her bankruptcy attorney (*id.* at 11), after which defendant closed plaintiff's account. Defendant did not contact plaintiff again regarding the debt (*id.*; def.'s stmt. exh. F at 41-42).

## LEGAL STANDARD

Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Summary judgment is not appropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We may not make credibility determinations, weigh evidence,

---

[1] Defendant provides this information in the form of its account history for plaintiff's account, which reads "refuse to discuss debt said will be hearing from her attorney i ask debtor for atty info debtor hung up" (def's stmt. exh. C at 10). Plaintiff argues that this evidence is inadmissible hearsay. We disagree. This information is admissible under the business record exception to the prohibition on hearsay testimony. *See* Fed. R. Evid. 803(6).

or decide which inferences to draw from the facts. *Id.* at 255. Where, as here, the parties file cross motions for summary judgment, each party must still demonstrate that there are no genuine issues of material fact. *See* <u>Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voight</u>, 700 F.2d 341, 349 (7th Cir. 1983). We are not obligated to grant summary judgment for one side. *Id.* We must evaluate each party's motion on its own merits, resolving all factual uncertainties and drawing all reasonable inferences against the party whose motion is under consideration. <u>Payne v. Pauley</u>, 337 F.3d 767, 770 (7th Cir. 2003).

DISCUSSION

Plaintiff alleges that defendant violated §1692e when it called her on July 17, 2005, in attempt to collect on a debt that was under bankruptcy proceedings. Plaintiff further alleges that the July 17, 2005, call violated § 1692c(a)(2) because defendant communicated directly with her even though it knew that she was at that time represented by counsel. Defendant denies both allegations. To the extent that the court finds defendant did violate the FDCPA, defendant raises the affirmative defense of bona fide error. *See* §1692k(c).

I. <u>Whether Defendant Violated the FDCPA</u>

    A. <u>Section 1692e(2)(A)</u>

The FDCPA's purpose is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. §1692(e). To achieve this purpose the Act prohibits debt collectors from making "false representations of the character, amount, or legal status of any debt." 15 U.S.C. §1692e(2)(A); *see also* <u>Ross v. RJM Acquisitions Funding LLC</u>, 480 F.3d 493, 495 (7th Cir. 2004). Section 1692e(2)(A) creates a strict-liability rule, in which "[d]ebt collectors may not make false claims, period." <u>Randolph v. IMBS, Inc.</u>, 368 F.3d 726, 730 (7th Cir. 2004). This circuit has held that a debt collector who demands payment from a debtor, while the debtor

is in bankruptcy, makes a false claim and violates the statute. <u>Ross</u>, 480 F.3d at 495; <u>Randolph</u>, 368 F.3d at 728 ("a demand for immediate payment while a debtor is in bankruptcy . . . is 'false' in the sense that it asserts that money is due, although, because of the automatic stay . . . it is not.") Thus, defendant violated this rule when it called plaintiff on July 17, 2005, and attempted to collect the debt – over two months after she filed for bankruptcy.

B. <u>Section 1692c(a)(2)</u>

A debt collector also violates the FDCPA "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address." 15 U.S.C. §1692c(a)(2). Unlike the strict-liability rule of § 1692e, liability under §1692c turns on the debt collector's actual knowledge. <u>Randolph</u>, 368 F.3d at 729-30.

In order to withstand summary judgment plaintiff must present evidence from which it can be reasonably inferred that defendant knew that she was represented by an attorney. Plaintiff contends that the certificate of service from the bankruptcy court shows exactly that. The bankruptcy court notice of filing lists plaintiff's attorney (pl's stmt. of material facts, exh. D, p.1). The certificate of service indicates that the notice was mailed to defendant's correct address on May 18, 2005, via first-class mail (*id.* at 3). Plaintiff argues that the certificate of service creates a presumption that defendant received the bankruptcy notice. We agree. "Evidence of mailing is evidence of delivery." <u>Vincent v. City Colleges of Chicago</u>, 485 F.3d 919, 922 (7th Cir. 2007) (citing <u>Hagner v. United States</u>, 285 U.S. 427 (1932); <u>Henderson v. Carbondale Coal & Coke Co.</u>, 140 U.S. 25 (1891)).

Defendant attempts to rebut this presumption, *see id.* at 922-23 ("almost any evidence may be refuted"), by submitting testimony that the notice was never received. Mr. Sangalang,

a manager at defendant's business, testified that to his knowledge defendant never received the bankruptcy notice (def's stmt. exh. E at 34-35, 82-84). Defendant also submits a copy of its record of plaintiff's debt account, which does not show receipt of the bankruptcy court notice (*id.* exh. C). But defendant's bare assertion that it never received the properly-addressed notice is not enough to overcome the presumption of delivery. Further, Mr. Sangalang testified that he would not know if the bankruptcy notice was received because he is not personally responsible for the day-to-day processing of bankruptcy notices (*id.* exh. E, at 82-83). Thus, without conjecture or speculation we cannot reasonably infer from defendant's evidence that defendant failed to receive the bankruptcy court notice identifying plaintiff's attorney. We hold that defendant had actual knowledge that plaintiff was represented by counsel, and thus the phone call on July 17, 2005, violated §1692c(a)(2).

## II. Whether Defendant Is Entitled to the Bona Fide Error Defense

We turn now to the question of whether defendant may invoke the bona fide error defense to avoid liability. The FDCPA "provides a complete defense to a debt collector who 'shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.'" Ross, 480 F.3d at 495 (quoting §1692k(c)). The procedures employed by the debt collector need only be reasonable; they need not be the most advanced available. *See id.* at 497-98 ("The word 'reasonable' in the Fair Debt Collection Practices Act defense cannot be equated to 'state of the art,' which is to say, at the technological frontier."). Both of defendant's violations may be cured by the bona fide error defense. *See* 15 U.S.C. §1692k(c) ("A debt collector may not be held liable in any action brought under this subchapter . . . .").

In order to invoke the bona fide error defense, defendant must show that it employed

reasonable procedures to avoid the assumed error. <u>Kort v. Diversified Collection Services, Inc.</u>, 394 F.3d 530, 537 (7th Cir. 2005). The "reasonable" requirement attempts to strike a balance between the protection of creditors and the expense of the safety mechanisms to debt collectors. Thus the defense "forgives mistakes, even though they inflict harm, when the cost of avoiding a mistake would be disproportionate to the harm." <u>Ross</u>, 480 F.3d at 496.

Marian Burke, a director with defendant, testified that defendant has a verbal understanding with Elite Billing Services, Inc., the company that assigned plaintiff's debt to defendant, that Elite would not forward bankrupt accounts to defendant, and that if Elite received notice of a bankruptcy they would forward it to the defendant (def's stmt, exh. D at 8-9; *see also id.* exh. F at 10-11). Further, defendant presented testimony that it trains its employees to note if a client provides attorney contact or bankruptcy information (*see id.* exh. E at 82; exh. F at 44-45, 52). Defendant also presented testimony that it employs someone as a full-time bankruptcy clerk to process bankruptcy notices and update debtor accounts *(exh.* E at 39, 54), and that when bankruptcy notices are received the clerk closes the debtor account, *(*exh. F at 44).

Plaintiff argues that defendant's agreement with Elite is not relevant to this case because plaintiff filed for bankruptcy after Elite had already assigned the account to defendant. While it is true that the agreement would not have prevented the actual error in this case, it is nonetheless a procedure defendant has in place to prevent collecting on bankrupt accounts and should be considered when evaluating whether defendant's procedures are reasonable. We find that when defendant's procedures are examined as a whole, they satisfy the reasonableness standard. Indeed the Seventh Circuit has found similar procedures to be reasonable. *See* <u>Ross</u>, 480 F.3d at 497; <u>Hyman</u>, 362 F.3d at 968-69 (finding sufficient

reasonable procedures where debt collector relied on creditor not to forward accounts in bankruptcy and then removed any mistakenly referred accounts from collection list).

What this case ultimately comes down to is whether Ms. Landers' call to plaintiff on July 17, 2005, was an unintentional and bona fide error. Plaintiff argues that it was not. She relies on the certificate of service from the bankruptcy court to demonstrate that notice of her bankruptcy filing was mailed to defendant's correct address on May 18, 2005. But this does not preclude bona fide error. Even if we presume that defendant received the bankruptcy notice, a bona fide error may have occurred later in the process. For example, after receipt, the notice may have been lost or entered into someone else's debt record. As plaintiff notes, Mr. Sangalang testified that the bankruptcy clerk during the relevant time period had medical problems and may have been off work when plaintiff's notice was received (def's stmt. exh. E at 14, 39). Moreover, the lack of an entry on plaintiff's debt record would support this possibility.

Plaintiff also testified during her deposition that Ms. Landers would not accept the name of plaintiff's attorney, and that Ms. Landers attempted to collect the debt after plaintiff notified her of the bankruptcy (*id.* exh. A at 22-24). But defendant's business records tell a wholly different story. They explain that during the July 17, 2005, call, plaintiff would not provide her attorney's contact information (*id.* exh. C at 10). Defendant also notes that plaintiff's own testimony shows that her recollection of the July 17 call is weak (*see* plf's stmt. exh. B at 20, 22-23, 28, 33). Moreover, defendant's business records indicate that when Ms. Landers did receive the attorney contact information weeks later, all collection activity was stopped on plaintiff's account (*id., exh.* C at 11). Both plaintiff and defendant present evidence of different versions of the July 17, 2005, phone call. Plaintiff's version prevents

defendant from invoking the bona fide error defense. Defendant's version allows the defense.

The job of determining whose version to credit falls to the jury. Because credibility

determinations must be made, this case is not appropriate for summary disposition.

## CONCLUSION

For the above reasons, both parties' motions for summary judgment are denied.


                                                                James B. Moran
                                                      _____
                                                              JAMES B. MORAN
                                                      Senior Judge, U. S. District Court

_____Feb. 27_____, 2008.